**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

IAN S.,[1]

                Plaintiff,

      v.                           **DECISION AND ORDER**
                                      20-CV-6022-A

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

Plaintiff Ian S. ("Plaintiff"), brings this action seeking review of the Commissioner of Social Security's final decision that denied the application filed by Plaintiff for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"). The Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). The parties have filed cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. Nos. 11, 14), and Plaintiff filed a reply (Dkt. No. 15).

The Court assumes the parties' familiarity with the administrative record, the parties' arguments, and the standard of review, to which the Court refers only as necessary to explain its decision. *See Schaal v. Apfel*, 134 F.3d 496, 500-501 (2d Cir. 1998) (summarizing the standard of review and the five-step sequential evaluation process that Administrative Law Judges [ALJs] are required to use in making disability

---

[1] To protect the personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only his first name and last initial, in accordance with this Court's Standing Order issued November 18, 2020.

determinations); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (same).  For the reasons that follow, Plaintiff's motion is GRANTED to the extent the Commissioner's final decision is reversed, the Commissioner's motion is DENIED, and the case REMANDED for further administrative proceedings consistent with this Decision and Order.

## PROCEDURAL HISTORY

Plaintiff was 24 years old in September 2016 when he applied for SSD, alleging disability beginning on January 9, 2016, due to fibromyalgia,[2] epiploic appendagitis, tremors, conversion disorder,[3] post-traumatic stress disorder (PTSD), bipolar type 2, ADHD, asthma, and hypertension.  T. 185-189; *see* T. 98.[4]  Plaintiff's date last insured was March 31, 2021.  *See* T. 16, 18.  His application was initially denied in December 2016.  T. 94-105.  After filing a request for a hearing, T. 106-107, Plaintiff appeared with his attorney and testified at a hearing on August 8, 2018, along with a Vocational Expert ("VE") who also testified, T. 34-68.  Following the hearing, the ALJ issued an unfavorable decision on November 2, 2018, finding Plaintiff not disabled within the

---

[2] "Fibromyalgia is a disorder characterized by widespread musculoskeletal pain accompanied by fatigue, sleep, memory and mood issues.  Researchers believe that fibromyalgia amplifies painful sensations by affecting the way your brain and spinal cord process painful and nonpainful signals . . . While there is no cure for fibromyalgia, a variety of medications can help control symptoms.  Exercise, relaxation and stress-reduction measures also may help."  *Fibromyalgia: Symptoms & causes*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/fibromyalgia/symptoms-causes/syc-20354780 (last visited Aug. 2, 2021).

[3] Conversion disorders "feature nervous system (neurological) symptoms that can't be explained by a neurological disease or other medical condition.  However, the symptoms are real and cause significant distress or problems functioning . . . The cause . . . is unknown.  The condition may be triggered by a neurological disorder or by a reaction to stress or psychological or physical trauma, but that's not always the case."  *Functional neurologic disorders/conversion disorder: Symptoms & causes*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/conversion-disorder/symptoms-causes/syc-20355197 (last visited Aug. 2, 2021).

[4] "T. __" refers to pages of the administrative transcript.

meaning of the SSA.  T. 13-32.  Plaintiff thereafter requested review by the Appeals Council, but his request was denied in November 2019.  T. 1-7.  This action seeks review of the Commissioner's final decision.  Dkt. No. 1.

## DISCUSSION

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citations omitted); *see* 42 U.S.C. § 405(g). "'Substantial evidence' is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Talavera*, 697 F.3d at 151, quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Plaintiff argues that (1) the ALJ made reversible errors with respect to the medical opinions of Dr. Bernard Plansky, Plaintiff's treating physician; and (2) due to these alleged errors, the Residual Functional Capacity ("RFC") is unsupported by substantial evidence.  Specifically, the ALJ improperly ignored Dr. Plansky's medical opinions rendered in his voluminous treatment notes; and the ALJ failed to properly apply the treating physician rule and assign "controlling weight" to the one opinion of Dr. Plansky's that the ALJ did assess in formulating Plaintiff's RFC.

## I.    Treating Physician Rule

"The SSA recognizes a rule of deference to the medical views of a physician who is engaged in the primary treatment of a claimant."  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (per curiam).  "According to this rule, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so

3

long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008), quoting 20 C.F.R. § 404.1527(c)(2).  In other words, "the ALJ does not have to give controlling weight to the physician's opinion if it is inconsistent with medical evidence and clinical findings in the record."  *Calabrese v. Astrue*, 09-CV-581, 2011 WL 2580408, 2011 U.S. Dist. LEXIS 69198, *13 (W.D.N.Y. June 28, 2011) (internal citations omitted).

If a treating physician's opinion is not given controlling weight, the ALJ is to "explicitly consider" the following "non-exclusive *Burgess* factors" in determining how much weight should be given: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."  *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (internal quotation marks and citations omitted); *see* 20 C.F.R. § 404.1527(c)(1)-(6) (applicable to evaluating opinion evidence for claims filed before March 27, 2017).  "An ALJ commits procedural error by failing to explicitly consider each of these factors, but the error will be considered harmless and the reviewing court will affirm if a searching review of the record shows that the ALJ has provided good reasons for its weight assessment."  *Gregory J. v. Comm'r of Soc. Sec.*, 2021 WL 235888, 2021 U.S. Dist. LEXIS 12855, *6-7 (W.D.N.Y. Jan. 22, 2021) (internal quotation marks and citations omitted); *see Estrella*, 925 F.3d at 96.

In this case, Dr. Plansky, Plaintiff's primary care physician, completed a physical RFC questionnaire on July 20, 2018.  T. 1612-1616.  He noted that he saw Plaintiff

4

monthly, and that Plaintiff was diagnosed with unspecified neuromuscular disorder, chronic PTSD, and fibromyalgia, and his prognosis was poor.  T. 1612.  Plaintiff's symptoms included chronic pain, fatigue, tremor, gait instability, anxiety, depression, and decreased executive functioning.  T. 1612.  Dr. Plansky identified clinical findings and objective signs supporting the diagnoses, namely, severe tremor, dyscoordination, gait instability, and lumbar disc herniation.  T. 1612.[5]  Plaintiff's symptoms and limitations had been in effect since January 9, 2016 and were expected to last at least 12 months.  T. 1612, 1616.  Dr. Plansky proceeded to set forth Plaintiff's many limitations during a typical workday.  T. 1613-1615.

The ALJ found at step two that Plaintiff's fibromyalgia, epiploic appendagitis, allergies, conversion disorder, anxiety, and PTSD are severe impairments, but found at step three that they do not equal or exceed a listed impairment.  The ALJ then

---

[5] As an aside, the Court also deems it prudent to point out that Plaintiff's medical history is complex, as noted by multiple providers in the record.  *See e.g.*, T. 1236.  Dr. Plansky wrote in a treatment note on April 9, 2018 that Plaintiff's fibromyalgia, ADHD, and chronic PTSD were "all overlapping."  T. 1593.

Moreover, while it is undisputed that Plaintiff has several physical and mental health conditions, Dr. Ryan Evans, his treating neurologist, also thought that his history and testing were consistent with a somatization disorder, *see* T. 301, as did his treating psychiatrist, Dr. Victoria Korth, *see* T. 1291. "Somatic symptom disorder is characterized by an extreme focus on physical symptoms — such as pain or fatigue — that causes major emotional distress and problems functioning.  You may or may not have another diagnosed medical condition associated with these symptoms, but your reaction to the symptoms is not normal.  You often think the worst about your symptoms and frequently seek medical care, continuing to search for an explanation even when other serious conditions have been excluded.  Health concerns may become such a central focus of your life that it's hard to function, sometimes leading to disability."  *Somatic symptom disorder: Symptoms & causes*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/somatic-symptom-disorder/symptoms-causes/syc-20377776 (last visited Aug. 2, 2021).

To further complicate matters, Dr. Plansky diagnosed Plaintiff with unspecified neuromuscular disorder.  T. 1612.  Dr. Plansky's last treatment notes in the record, from June 25, 2018 and July 5, 2018, state that Plaintiff was referred to obtain a second neurology opinion by a subspecialist in neuromuscular disease, and to inquire into a possible "ALS" or a neurogenerative disorder.  T. 1608, 1611.  At the hearing on August 8, 2018, Plaintiff indicated that his doctors were determining whether his fibromyalgia was related to an underlying neuromuscular disorder.  T. 46-47.

determined that Plaintiff has the RFC to do sedentary work, with limitations, giving "little weight" to Dr. Plansky's opinion.[6]  T. 18-20.  Many of the limitations indicated by Dr. Plansky in the physical RFC questionnaire were not included in the RFC, a number which would have rendered Plaintiff disabled.  *Compare* T. 20 *with* T. 1612-1616.

For example, Dr. Plansky opined that Plaintiff would miss "much" more than four days of work per month because of his impairments or treatment.  The VE testified at the hearing that an individual who is absent for more than one day or at least two days per month would be unable to sustain full-time employment.  T. 65-66.  Dr. Plansky also opined that Plaintiff's experience of pain or other symptoms was severe enough to constantly interfere with the attention and concentration needed to perform even simple work tasks, whereas the RFC includes the limitation that Plaintiff can perform simple, routine, and repetitive tasks.  The VE testified that an individual who can only occasionally, *i.e.*, for one-third of the workday, pay attention and concentrate on the task at-hand, could not sustain full-time employment.  T. 65.

The ALJ did not explicitly consider each of the *Burgess* factors in her assessment of Dr. Plansky's opinion.  The Court concludes that this procedural error was not harmless because the ALJ failed to articulate "good reasons" for discounting Dr. Plansky's opinion.

---

[6] The ALJ included the following limitations:  occasionally climb stairs or ramps, stoop, kneel, balance, crouch, and crawl; never climb ladders, ropes, or scaffolds; have superficial contact with the public; must avoid all hazards including dangerous moving machinery and unprotected heights; must avoid all concentrated exposure to irritants including dusts, fumes, odors, gases, and poor ventilation; perform simple, routine, repetitive tasks; not work in teams or tandem; work in low stress meaning no high production quotas or fast-paced assembly; and require a cane when ambulating.  T. 20.

***Consistency of Dr. Plansky's Opinion with the Record, and Import of Lack of Objective Evidence***

In according "little weight" to Dr. Plansky's opinion in the questionnaire, the ALJ first reasoned that it is "inconsistent with the record overall". The ALJ referred to clinical records discussed in an earlier part of the decision, which she stated

> reflect mixed results regarding the claimant's ability to walk and stand; at times, he demonstrated normal or slightly abnormal gait and at other times he depended on a cane for stability. Physical examination notes consistently show good strength and coordination, good muscle tone, intact sensation, and full range of motion with some pain.

T. 24.

Although the ALJ referred to SSR 12-2p at step three of the sequential analysis, *see* T. 19 (which specifically provides guidance on evaluating fibromyalgia in disability claims), and considered Plaintiff's fibromyalgia as a severe impairment, it appears that she misunderstood the very nature of that condition. Indeed, a leading Second Circuit case on fibromyalgia, *Green-Younger v. Barnhart*, 335 F.3d 99 (2d Cir. 2003), acknowledges that "there are no objective tests which can conclusively confirm the disease", noting that "each of the ALJ's determinations [nevertheless] turned on a perceived lack of objective evidence". *Id.* at 108. "When determining an RFC based on fibromyalgia, the ALJ is not entitled to rely solely on objective evidence -- or lack thereof -- related to fibromyalgia, but must consider all relevant evidence, including the longitudinal treatment record . . . denying a fibromyalgia-claimant's claim of disability simply because such evidence is not corroborated by objective medical evidence is reversible error." *Anysha M. v. Comm'r of Soc. Sec.*, 3:19-CV-0271 (CFH), 2020 WL

1955326, 2020 U.S. Dist. LEXIS 72121 *9-10 (N.D.N.Y. Apr. 23, 2020) (internal quotation marks and citations omitted).

Throughout Dr. Plansky's treatment notes that span January 2014 to July 2018, a total of approximately 4 ½ years and 66 visits, Plaintiff regularly displayed tremors (after the onset date of January 9, 2016) and an unstable/ antalgic gait, and he used a cane—although select records state that he did not use a cane or that his gait was stable.  Any "mixed results" from Plaintiff's physical examinations are consistent with fibromyalgia; as "[f]or a person with [fibromyalgia]", the Commissioner is to "consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'"  SSR 12-2p, 2012 WL 3104869, *2, 2012 SSR LEXIS 1, *2 (July 25, 2012).  At the hearing, Plaintiff described his condition as follows: "I don't have good days; I have good moments . . . But most days, I'm confined to a room.  It's not even that I'm, like, in the living room.  I have to be in the one room."  T. 54-55.

Thus, examination notes flagged by the ALJ that "consistently show[ed] good strength and coordination, good muscle tone, intact sensation, and full range of motion with some pain", *see* T. 24, do not undercut the diagnosis of fibromyalgia or Plaintiff's complaints of symptoms.  For fibromyalgia patients, "physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions . . . these negative findings simply confirm a diagnosis of fibromyalgia by a process of exclusion, eliminating other medical conditions which may manifest fibrositis-like symptoms of musculoskeletal pain, stiffness, and fatigue."  *Green-Younger*, 335 F.3d at 108-109.

Furthermore, Plaintiff was diagnosed with fibromyalgia, and "tender points" were noted multiple times throughout the years, bolstering Plaintiff's complaints, as those are "indicative of active fibromyalgia." *Davidow v. Astrue*, 08-CV-6205T, 2009 WL 2876202, 2009 U.S. Dist. LEXIS 79220, *11 (W.D.N.Y. Sept. 2, 2009).

In July 2014, Dr. Plansky found 18/18 tender points upon physical examination and diagnosed Plaintiff with fibromyalgia, prescribing him Naltrexone HCL for that condition.  T. 727-728.  Plaintiff continued to take medication for his fibromyalgia, with Dr. Plansky adjusting those prescriptions and dosages based on their efficacy in relieving his symptoms.  Over a year later, Dr. Plansky noted on physical examination "there are positive tender points at bicep tendons origin as well as trapezius and rhomboids" and concluded that Plaintiff's fibromyalgia was "[e]xacerbated".  T. 790-791.

Rita Figueroa, M.D., performed a consultative internal medicine examination on Plaintiff on December 6, 2016, *see* T. 1140-1143, and likewise diagnosed Defendant with fibromyalgia, among other physical issues/ conditions.  She also found 18/18 tender points when she examined Plaintiff and opined that he would have "difficult[y] with activities requiring moderate exertion due to the fibromyalgia", as well as "moderate limitation to prolonged walking and standing."  T. 1142-1143.  The ALJ gave Dr. Figuera's opinion "good weight" but did not include any limitations as to Plaintiff's walking and standing (other than limiting him to sedentary work).  T. 24.  In according "good weight" to that opinion, the ALJ again emphasized the "[p]hysical examination notes throughout the relevant period [that] generally reflect good strength, range of motion, sensation, and motor control."  T. 24.

Moreover, "the record is replete with Plaintiff's complaints of debilitating pain, supportive of Dr. [Plansky's] opinion.  Accordingly, the purported lack of objective evidence did not constitute a good reason to afford less than controlling weight to Dr. [Plansky's] opinion."  *Morris v. Berryhill*, 1:16-CV-00973(MAT), 2018 WL 2979095, 2018 U.S. Dist. LEXIS 100186 *12 (W.D.N.Y. June 14, 2018).  The ALJ "failed to consider the uniquely subjective nature of the Plaintiff's fibromyalgia condition and selectively cited from the record in discrediting [his] complaints."  *Cabibi v. Colvin*, 50 F. Supp. 3d 213, 238 (E.D.N.Y. Aug. 28, 2014); *see Green-Younger*, 335 F.3d at 108 (critiquing the ALJ's finding that that "the relative lack of physical abnormalities undercut [the plaintiff's] credibility" when the ALJ considered the plaintiff's allegations of pain and functional limitations).

During the hearing, Plaintiff described numerous symptoms to include "extreme cognitive difficulties", including "brain fog" and difficulty focusing, concentrating, and following directions properly; non-restorative sleep; constant, widespread pain throughout his body, including muscle pain and back pain; extreme fatigue (sleeping 12 to 18 hours per day); muscle weakness and issues with balance and coordination, where his legs "just give out" and he falls; non-epileptic seizures; "very bad" migraines; and major depression.  T. 40, 46-50, 52-54, 56.  These are all considered symptoms and signs of fibromyalgia, *see* SSR 12-2p n.9, and are all subjective complaints made repeatedly by Plaintiff to Dr. Plansky and other providers, including to the neurologist Dr. Plansky referred him to, Ryan Evans, M.D.

The ALJ, however, found earlier in the RFC section of her decision that the objective medical evidence failed to support Plaintiff's alleged degree of limitation, and

Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record."  T. 21.  The ALJ reasoned (as she did in affording "little weight" to Dr. Plansky's opinion) that "[c]linical examinations consistently reflect good strength and range of motion, generally intact sensation, intact gait with a cane, and normal mood and affect."  T. 21-22.  Again, normal results from physical examinations are to be expected when an individual has fibromyalgia.

The Commissioner argues that "[t]he record suggests . . . Dr. Plansky relied almost entirely on Plaintiff's subjective reports rather than medical findings", and therefore the ALJ was not required to give controlling weight to his opinion.  Dkt. No. 14-1, p. 19.  However, as Plaintiff points out, the ALJ did not state this as a reason for rejecting Dr. Plansky's opinion, rendering this "impermissible post hoc rationalization" on the part of the Commissioner.  Dkt. No. 15, p. 3.  In addition, to reiterate, a Plaintiff's subjective complaints are of even more import in a case where a claimant has fibromyalgia because of the lack of objective diagnostic tools for diagnosing that condition and establishing its severity.

### *Mischaracterization of Plaintiff's Testimony*

The ALJ also mischaracterized Plaintiff's testimony concerning his activities of daily living.

Plaintiff explained that his day-to-day activities were extremely limited by his conditions.  He stated that he cannot lift his arms in the shower much of the time, has trouble dressing himself especially clothing with buttons, cannot do his own laundry, and at times falls or hurts himself when he tries to do laundry or go to the bathroom.  T. 47.

Plaintiff testified that it is difficult to sit comfortably for prolonged periods and that he sometimes has issues with standing and walking.  T. 53-54.  Aside from doctor's appointments, most of his day is spent sleeping.  T. 54.  He cannot watch the entirety of a television show, clean dishes, or cook (other than microwaving food).  He also has issues with shopping in stores because he must take breaks, necessitating a companion for those rare outings.  T. 57-58.

The ALJ described Plaintiff's testimony about his physical symptoms and pain, stating that "[d]espite these allegations, the claimant testified that he could go out rarely and use mobile devices for games and social media applications."  T. 21.  In another part of the decision, the ALJ also noted that Plaintiff can use a computer, search on YouTube, use music applications, send text messages to friends and call them using the voice-activated procedure on his phone, shop online, set up his bills for automatic payment, and apply for Medicaid and send in that required information.  T. 19-20.

Plaintiff going out of the house "rarely" and his occasional use of his phone do not discount his statements of physical symptoms and pain.  He testified that he very rarely leaves the house; he is "lucky" to do so one day out of a week, and if then, only for a couple of minutes.  T. 57.  As to his use of his phone and computer, he described issues with typing, comparison shopping online, returning phone calls, and talking on the phone.  He "[v]ery rarely" plays simple games on his phone and uses social media with Google assistant (a voice assistant that reads text aloud to him).  At times, he watches Youtube or listens to music on Spotify (again, using voice activation technology).  T. 58-60.  Plaintiff testified that all his bills are automated and that he has

Medicaid, but he was not asked who set up those automatic payments or if he had assistance in applying for Medicaid.  T. 42-43, 60-61.

As such, the ALJ overstated Plaintiff's daily activities, which are not "necessarily indicative of Plaintiff's ability to perform sedentary work, with some additional restrictions, over the course of an eight-hour workday."  *Fairuz B. v. Saul*, 2021 U.S. Dist. LEXIS 15520, *21-22 (W.D.N.Y. Jan. 27, 2021), citing *Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988) ("A claimant need not be an invalid to be found disabled under...the Social Security Act.").  Moreover, it is well settled that "[i]n cases where fibromyalgia is the alleged disability, a claimant's testimony, regarding [his] symptoms from the disorder, should be given increased importance in the ALJ's determination of whether the claimant is disabled."  *Davidow*, 2009 U.S. Dist. LEXIS 79220 at *14; *see Solsbee v. Astrue*, 09-CV-0348, 737 F. Supp. 2d 102, 109 (Aug. 23, 2010).

The ALJ further stated, to bolster her reasoning in discrediting Plaintiff's testimony about his limitations and pain, "[t]he undersigned notes that the claimant displayed some facial and arm shaking, and stood periodically during the hearing, but these actions decreased as the hearing progressed", T. 21, suggesting that Plaintiff's observable symptoms were for show or exaggerated.  This conclusion disregards Plaintiff's testimony describing the day of the hearing as "actually partially a good day." T. 56.  It also, again, stems from a misunderstanding of the nature of fibromyalgia, *i.e.*, pain and symptoms that can "wax and wane", which gives the longitudinal record of Plaintiff's treatment even more significance.

***Reliability of Dr. Plansky's Opinion***

The second reason provided by the ALJ for giving "little weight" to Dr. Plansky's opinion was that "some portions of this opinion find no or very little support in the record, which undermines the reliability of the assessment.  For instance, the record does not disclose any difficulty with the claimant's ability to rotate or bend his neck."  T. 24.[7]

Beyond this one example, however, the ALJ did not explain which portions of Dr. Plansky's opinion she was accepting or rejecting, and why.  "Although the ALJ is entitled to accept and reject portions of the medical source opinion, she failed to adequately set forth her basis for disregarding those portions of Dr. [Plansky']s opinion that are in conflict with her RFC assessment."  *Edwards v. Colvin*, 15-CV-6426, 2016 U.S. Dist. LEXIS 129103, *11 (W.D.N.Y. Sept. 21, 2016).  This omission warrants remand.

## II.    Statements on Disability and Ability to Work

Immediately following her discussion of Dr. Plansky's opinion and assigning it "little weight", the ALJ referred to "[s]everal documents in the record [that] reflect statements that the claimant is unable to perform any work or is disabled", citing to forms that Dr. Plansky filled out for Plaintiff's short-term disability insurance carrier and former employer, and his application for disabled parking permits or license plates from the Department of Motor Vehicles, as well as a few, select treatment notes by Dr. Plansky.  T. 24, citing T. 385, 424 (treatment note), 464, 487, 490, 865 (treatment note),

---

[7] Dr. Plansky opined that Plaintiff "could rarely look down, could occasionally look up, and frequently turn his head, but never hold his head static."  T. 24; *see* T. 1615 (checked off on the form, with Dr. Plansky's handwritten note, "due to tremors").  The Court will not reweigh the evidence regarding Plaintiff's neck but notes that Plaintiff repeatedly demonstrated full range of motion in his neck on physical examination.  T. 769, 806, 1517.  However, there is at least some evidence of Plaintiff having issues with his neck.  At the onset of Plaintiff's tremors and thereafter, Plaintiff complained of an "electrical sensation going down his spine while flexing his neck", and he reported neck pain as well.  T. 297, 802, 1607.

869, 874, 884, 886 (treatment note), 889, 1617-1622.  The ALJ noted that issues of

disability and the ability to work are reserved to the Commissioner, and that statements

to that effect do not constitute medical opinions.  T. 24.

Plaintiff argues that "[t]he ALJ improperly discounted all of this treating opinion

evidence as merely [opining] on an issue of disability reserved to the Commissioner, but

the opinions were more than that [as] they contained functional relevance."  Dkt. No. 15,

p. 3.  According to Plaintiff, remand is required because it is impossible to conclude that

the treating physician rule was complied with when none of these opinions were

discussed in substance.  The Commissioner argues that "[w]hile Plaintiff contends that

some of these documents contained specific functional restrictions, a fair reading of the

record reveals that these reports were plainly designed to allow Plaintiff to qualify for

whatever benefits he was pursuing at the time."  Dkt. No. 14-1, p. 21.

Viewed in isolation, Dr. Plansky's statements about whether Plaintiff was

disabled or whether he could work are "statement[s] on an issue reserved to the

Commissioner and [they are] not entitled to any special significance."  *Jones v. Comm'r*

*of Soc. Sec.*, CASE # 18-cv-01299, 2019 WL 6841522, 2019 U.S. Dist. LEXIS 216132,

*9 (W.D.N.Y. Dec. 16, 2019), citing 20 C.F.R. §§404.1527(d), 416.927(d).  However,

several do contain functional limitations that Plaintiff has identified, *see e.g.*, T. 464,

487, 869, 884, and a few are in the context of Dr. Plansky's treatment notes.  The

Commissioner has "missed the forest for the trees because Dr. [Plansky]'s treatment

notes go well beyond a simple notation that Plaintiff is disabled . . . These other

notations—unlike the finding that Plaintiff is disabled—are not a matter solely reserved

to the Commissioner.  Instead, they appear to be medical opinions on Plaintiff's

[physical and] mental health that the ALJ completely omitted" in this portion of the decision.[8]  *Almeida v. Saul*, Case No. 19-22013-Civ-WILLIAMS/TORRES, 2020 WL 5868177, 2020 U.S. Dist. LEXIS 182832, *30-31 (S.D. Fl. Apr. 3, 2020), *adopted by* 2020 WL 5848529, 2020 U.S. Dist. LEXIS 181941 (S.D. Fl. Oct. 1, 2020); *see Demars v. Comm'r of Soc. Sec.*, 19-1573-cv, 841 Fed. App'x 258, 262 (2d Cir. Jan. 6, 2021) (summary order) ("contrary to the ALJ's view, these observations are more than mere administrative findings; rather, they are due significant weight because they were rendered by Williams as Demars' treating physician throughout the contemporaneous period").

It is for the ALJ to decide which of these notations and documents containing functional limitations "constitute medical opinions and the weight that should be assigned to each of them."  *Almeida*, 2020 U.S. Dist. LEXIS 182832, at *31 n.8. Because they were all rendered *before* Dr. Plansky's July 20, 2018 opinion, perhaps the ALJ was ultimately correct in discounting them.  However, to the extent that they contain functional limitations that were not addressed in the later, July 20, 2018 opinion, the ALJ should have parsed this out in her decision.

## III.   Issues to Address on Remand

In sum, the Court finds that the reasons given by the ALJ were insufficient to justify rejecting Dr. Plansky's opinion as the treating physician.

---

[8] Throughout the decision, the ALJ cites to pages of Dr. Plansky's treatment records.  *See* T. 19-23, citing pages of 6F, 9F, and 37F (the sections of the administrative record containing those records).  Thus, it is apparent that Dr. Plansky's records were at least reviewed by the ALJ, if not in the context of assessing his opinion(s).

On remand, the ALJ shall reconsider the weight afforded to Dr. Plansky's opinion and comply with the treating physician rule; address certain statements made by Dr. Plansky that appear to constitute opinions on functional limitations; comply with SSR 12-2p and properly analyze Plaintiff's subjective complaints and activities of daily living, as well as the medical evidence, in light of his fibromyalgia and with the understanding that fibromyalgia often does not result in objective findings or diagnostic tests; and refrain from mischaracterizing Plaintiff's hearing testimony.

After re-assessing Plaintiff's RFC, the ALJ should consider Plaintiff's limitations and their affects upon Plaintiff's ability to perform any job in the national economy.  The ALJ shall "if warranted by the expanded record, obtain testimony from a vocational expert to clarify any additionally assessed limitations on Plaintiff's ability to work and jobs available in the national economy."  *Wright v. Saul*, 2019 U.S. Dist. LEXIS 178337, *12-13, 2019 WL 5157026 (W.D.N.Y. Oct. 15, 2019).  Having done so, the ALJ will be able to complete the RFC determination and the five-step analysis of Plaintiff's ability to work.

## CONCLUSION

Is hereby ORDERED that pursuant to 28 U.S.C. § 636(b)(1) and for the reasons set forth above, Plaintiff's motion (Dkt. No. 11) for judgment on the pleadings is GRANTED to the extent the Commissioner's final decision is reversed, the Commissioner's motion (Dkt. No. 14) for similar relief is DENIED, and the Commissioner's final decision is VACATED and the case REMANDED for further administrative proceedings consistent with this Decision and Order.

The Clerk of the Court shall take all steps necessary to close the case.


**IT IS SO ORDERED.**


_s/Richard J. Arcara_____
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT


Dated:  August 2, 2021
          Buffalo, New York